OPINION AND ORDER
This matter comes before the Fort Peck Court of Appeals on an appeal of a Tribal Court Custody Order dated August 13, 2009. Petitioner/Appellant Donna Timm Trottier, (“Donna”), Filed a brief in support of her appeal on June 30, 2010. Respondents/Appellees Lanette Trottier, (“Lanette”), and Andrew Hollom Sr., (“Andy”) did not file briefs. We reverse the Order and remand for further proceedings in accordance with the following.

OPINION

A.H. Jr., (“A.J.”) was born on February 18, 1997. He has grown up on the Fort Peck Reservation and is not enrolled in any Tribe. His Mother, Appellee Lanette Trottier, is an enrolled member of the Turtle Mountain Chippewa Tribe. His father, Appellee Andrew Hollom Sr., is non-Indian. Appellant Donna Timm Trottier, is non-Indian. Donna co-habited with A.J.’s maternal grandfather, Tim Trottier, from 1992 until his death in 2001. We earlier addressed the jurisdictional aspects of the parties’ dispute in In the Matter of A.H., Tribal Court of Appeals No. 442, (2006), and ruled that the Tribal Court did have jurisdiction over the proceeding.
In August 1997, when A.J. was six months old, Lanette moved into the home of her father Tim Trottier and Donna. For roughly the next year Lanette lived in their home along with A.J. and her other children. In August 1998 Lanette moved out of state leaving A.J. with Tim and Donna. On April 15, 1999, Lanette and Andrew signed a notarized document that stated in part, ‘We, the undersigned do hereby give temporary custody of our son [A.J.] and permission to seek any needed medical or dental attention as needed to Donna Timm.” After Tim Trottier passed away in 2001, A.J. remained in the care of Donna. (The parties do not agree on why that happened.) Prior to 2005, Donna had filed a custody Petition that she later asked to be dismissed.
This case has a complicated and lengthy procedural history. The following is a summary of the history of the case. On August 17, 2005, Donna filed a Petition under Title X, Section 304a of the Comprehensive Code of Justice of the Assiniboine and Sioux Tribes, (“CCOJ”), seeking a temporary and emergency custody order. In the Petition, she stated that she had had physical custody of A.J. since 1997 when he was six months old. The Tribal Court granted Donna temporary custody of A. J. that same day.
An Initial Child Custody hearing was held on August 24, 2005. A Fact Finding Hearing was set for September 27, 2005. It was also ordered that, upon their request, Lanette and Andy were to be al *272 lowed reasonable visitation with A.J. By Order of October 3, 2005, the Fact Finding Hearing was re-set for October 27, 2005. The October 3, 2005 Order also directed that Lanette was to have up to two visits per week up to two hours in length and that Andy was to be given visits every Saturday. Concerns about visits were to be reported to the Guardian ad Litem. Donna was permitted to disallow visits if she believed there was a threat to A.J.’s safety. In that event, she was to notify her attorney who would then notify the Court. On October 20, 2005 and November 14, 2005, the Court ordered all parties to obtain a number of evaluations. Also on October 20, 2005, the Court issued an ex parte Order suspending the visitation provisions of the October 3, 2005 Order. Following an Emergency Hearing on October 25, 2005, A.J. was made a ward of the Tribal Court and temporarily placed in kinship foster care. On November 14, 2005 a counselor was appointed for A.J. (Later that counselor was replaced by IHS Doctor Thomas Fanning.)
On December 6, 2005, the Emergency Order was dismissed, as were Lanette and Andy’s Petitions for custody, (with their agreement). A Stipulated Interim Child Custody and Visitation Agreement in which the parties agreed to temporary joint custody was approved. The Stipulated Agreement also provided that “the only standard that shall determine changes to be made herein to the Stipulation will be the best interests of the child.” The Stipulated Agreement also reaffirmed that the parties would undergo psychological, mental health and parenting assessments at the Eastern Montana Mental Health Center. (Donna completed all required evaluations. Lanette and Andy did not.) The Court also denied Lanette and Andy’s Motion for Summary Judgment based on jurisdiction. Their Petition for Review by this Court was granted on January 6, 2006. On April 6, 2006, this Court ruled that the Tribal Court did have jurisdiction over the matter.
Following the first appeal, the Trial Court set a hearing on the Petition for August 24, 2006, but on August 18, 2006, the parties asked for the matter to be placed on hold while they pursued settlement. In May 2007, the parties re-set the matter for hearing on August 14, 2007. That hearing was delayed because Lanette and Andrew’s attorney was replaced. At a status conference on February 6, 2008, the Court noted that because Lanette and Andy had withdrawn their Petitions, the only Petition pending before the Court was that of Donna. A motion to dismiss Donna’s Petition filed by Lanette’s advocate was dismissed on February 22, 2008. In the Order denying the Motion to dismiss, the Court stated that it is, “the law of this case” that “pursuant to Section 304(a) of the CCOJ, Petitioner Donna Trottier has satisfied the legal guardian test and has standing to file her petition for custody.” On February 6 and 8, 2008, Petitions by and on behalf on Lanette and Andy were filed. On May 27, 2008, in a Status Order following a May 9, 2008 status hearing, these were dismissed by the Court on procedural grounds. The May 27, 2008 Order reiterated that the only issue before the Court was Donna’s Petition and the final hearing concerned, “whether or not the Donna Trottier Petition is adequate and should be granted in accordance with the best interests of the child.” The Status Order also stated that Lanette and Andy would be allowed to testify at the hearing, but not to call witnesses. The Order further stated that Lanette and Andy were no longer required to undergo any testing.
Further preliminary proceedings were held over the next several months and a final hearing was scheduled for September 17, 2008. At the close of the first day, the *273 Court gave interim custody to Andy for two weeks, with overnight stays with Lan-ette and Donna when A.J. chose. Andy did not take A.J. the first night, rather leaving him with Lanette for a day while he got things ready for him. The second and final day of the hearing was held on October 3, 2008. Following that hearing, the Court continued Interim Custody with Andrew with overnight visits, not to exceed on night at a time, with Lanette and Donna. Sometime between October 3, 2008 and a Status hearing on August 9, 2009, the parties chose to return to shared custody between Donna and Lanette. By Order of August 13, 2009, the Court dismissed Donna’s Petition. This Appeal followed. Some delay ensued in briefing due to the preparation of the lengthy hearing transcripts.
Donna’s central arguments are that the Trial Court Order should be reversed because it does not apply the correct legal standard and the decision is contrary to the evidence.
In accordance with applicable Tribal law, we do not lightly overturn a Tribal Court decision. Our standard of review for questions of law is de novo. CCOJ Title II, Section 204, In the Matter of D.B., a Minor Child. Fort Peck Court of Appeals, No. 327, (2001). Our standard of review for evidentiary issues is more deferential. We will not and should not set aside a judgment based on factual findings unless a review of the entire record shows that the judgment was not supported by substantial evidence. CCOJ Title II, Section 204, In the Matter of J.B., a Minor Child,, Fort Peck Court of Appeals, No 316 (2001). An application of these standards of review to the Tribal Court Custody Order leads to a determination that the Tribal Court’s Custody Order must be reversed. The Custody Order does not use the correct legal standard and is not supported by substantial evidence.
The first reason for reversal is that the Trial Court Order does not apply the correct legal standard in its determination, i.e. best interests of the child. As noted above, the Court had earlier determined that the Petition was filed under CCOJ Title X, Section 304a, Child custody actions outside divorce and annulment proceedings. That section states in relevant part: “In ruling on a custody Petition, the Court shall employ the standards set forth in Section 304.” In turn, CCOJ Title X, Section 304 provides in relevant part:
(b) The determination of custody shall be based on the best interests of the child .... In determining the best interests of the child, the Court shall consider the relative ability of the parents to provide adequate food, clothing, shelter, medical care, love and emotional support and day to day supervision. The Court shall also take into account the desires of the child.
The Custody Order includes a detailed discussion of the procedural background of the case, but provides almost no analysis of the evidence presented in the two-day trial. Rather than analyzing the evidence in terms of whether or not placement with Donna is in A.J.’s best interests, the Order assumes custody with Lanette and Andy is the starting point. The Order states that they are the natural parents and Donna has no kinship relationship to A.J. While this is true, the Order moves away from the correct standard that had at least twice been stated in Orders to be the applicable standard for the Court’s decision. The Order also says the parents have not been convicted of crimes and that it has been their desire to have A.J. permanently restored to their custody. Again, this is not tied to the factors set forth in CCOJ Title II, Section 304. The *274 only discussion of those factors is in the Court’s conclusion that “both parents are capable of providing, food clothing, shelter medical care, emotional support, love and day to day supervision.” However, as had been previously determined by the Court, the question before it was whether Donna was able to provide those things. Therefore, the Tribal Court did not apply the applicable law in its decision.
We next turn the to the issue of whether or not the Tribal Court decision was supported by substantial evidence and find it was not. The Court’s concern about the fact that Lanette and Andy are A.J.’s parents is of course understandable. Yet regardless of the decisions and actions that led to A.J.’s situation, the evidence presented at the trial shows that in addition to his bond with Lanette and Andy, A.J. has a strong bond with Donna and that she has been the most consistent caregiver in his life. Further, very little evidence was presented concerning application of the 304 factors to Lanette and Andy. We recognize that Lanette and Andy may have been hampered in providing evidence to the Court due to the fact that they did not have Petitions pending before the Court. Yet, despite the Court’s efforts to allow them to file competing Petitions, in the end, they did not do so in accordance with the Court’s Orders. As well, while in 2008, the Court ruled that Lanette and Andy no longer were under an obligation to obtain the testing that had been ordered in 2005, they were under a court Order to do so for a number of years and did not comply with the Order. (We also recognize that they presented testimony about the difficulties they encountered in accomplishing the evaluations; the result is the Court lacked information.)
Because almost no reference in the Custody Order is made to the evidence presented at trial by Donna, our decision that the Custody Order is not supported by substantial evidence is based on a careful review of the trial transcripts. That review shows that almost all of the witnesses and evidence presented supported a ruling that custody with Donna was in A. J.’s best interests. Both the close bond between Donna and A.J. as well as her consistency in providing the factors set forth in Section 304 are supported by the testimony and evidence.
We address representative portions of the testimony of witnesses Dr. Kay Dorr, Dr. Thomas Fanning, Lori Kirn, Jane Di-mas, and Gerald Jackson all of whom testified on Donna’s behalf. (Unsuccessful efforts, based on their recommendations, were made by Donna’s counsel to keep confidential some of the records and testimony of the expert witnesses out of deference to A.J.’s fearfulness in a conflicted situation.) Ultimately expert witnesses Drs. Dorr and Fanning both testified that A.J. needed the type of structure and supervision that Donna had shown she was able to provide. Dr. Don-testified that A.J. wants contact with Lanette as well as one on one time with Andy. Transcript, September 17, 2008, p. 62. She also testified that in view of some of Lanette’s behavior and the limited relationship he has had with Andy that A.J. should live with Donna and be permitted to have “the stability of a home in which he experiences consistent caring and consistent structure at a home in which he feels safe.” Tr. 9-17-08, p. 51. Dr. Dorr also testified that over a period of 21 months between January 2006 and September 2007, testing showed that A.J.’s anxiety and depression had increased. Dr. Dorr attributed this to A.J.’s concerns about ongoing custody disagreements, possibly losing Donna and his school performance. Tr. 9-17-08, p. 46. Dr. Dorr also testified that A.J. told her he would like a relationship with his father but that he feels his father finds other *275 people in his life more important to him and does not seem to have much time for him Tr. 9-17-2008, pp. 39-40.[1] Dr. Dorr expressed concerns about A.J.’s school performance and believes that he should be evaluated for attention deficit issues and a possible need for medication.
Dr. Fanning testified that he had had fifty-eight therapy sessions with A.J. He too, testified that Donna was able to provide a safe and consistent living environment for A.J., Tr. 9-17-08, p. 109. He also testified that A.J. was concerned that his father did not have enough time for him. Tr. 9-17-08, p. 117. Dr. Fanning also testified that due to A.J.’s emotional and school situation and his view that joint custody has not been beneficial to A.J., A.J. should be in a stable environment with one primary guardian. He added that A.J. also needed regular contact with Donna and Lanette. Tr. 9-17-08, p. 113.
Laura Kim a friend of Donna’s and a Poplar School teacher and counselor, testified about the strong bond between A.J. and Donna. Tr. 9-17-08, pp. 137-138. She also testified on her observation that since A.J. was placed in joint custody, he had been withdrawing emotionally. Tr. 9-17-08, pp. 134-135. Gerald Jackson, Tribal Youth Court Officer testified about the home study he performed on Donna’s home, Exhibit 5 and stated that Donna can provide a loving and stable home for A.J., Tr. 9-17-08, p. 149. The written report supports this conclusion. Jane Dimas, A.J.’s track coach and a friend of Donna testified to the strong bond between A.J. and Donna. 9-17-08, p. 155. She also observed that A.J. is under more stress than most of the children she sees in school. Tr. 9-17-08, p. 167.
Andy and Lanette testified and were questioned both by the Court and by Donna’s counsel. While they disagreed with some of the statements and evidence, most of their disagreement was either a matter of opinion or unsupported assertions. As A.J.’s parents, their opinion is very important. But their testimony and opinions on A.J.’s best interests were far outweighed by the evidence presented by Donna. The significance of A.J.’s involvement with his extended family was addressed by the parents. As well, both parents expressed concerns about the potentially negative impact on A.J. of essentially being an only child if he lived with Donna. But Donna testified credibly that she supported A.J.’s relationship with all his extended family and that she had not impeded those relationships. No evidence was presented in support of the parents’ concerns on this. Everyone involved in the case is well aware of the importance to A.J. of Lanette, Andy and Donna as well as the importance to A.J. of his extended family.
Again, we take seriously the level of deference tribal law requires us to give to decisions of the Tribal Court. But in this instance after a review of the testimony and evidence, we find that substantial evidence did not support dismissal of Donna’s Petition. Rather, substantial evidence, when viewed under the correct legal standard, supported that it is in best interests of A.J. for the Petition for Custody to be granted.
Therefore, based on the above,
IT IS HEREBY ORDERED, that the Tribal Court’s Order of August 13, 2009 is *276 reversed and the Tribal Court is directed to enter an Order granting primary custody of A.J. to Donna and encouraging the parties to work out a visitation schedule among themselves.

. Andy testified at second day of the hearing that it had been wonderful for him to have A.J. for the two weeks between the two days of the hearing and that he wanted to play a large part in A.J.'s life. But for some reason, the record indicates that sometime after October 3, 2008, the custody arrangement was returned by the parties to shared custody between Donna and Lanette.